## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

Karen Davidson,                     )
Debbie Flitman,                    )
Eugene Perry,                      )
Sylvia Weber, and               )
American Civil Liberties Union   )
of Rhode Island, Inc.,            )
                                   )
          Plaintiffs,         )
                                   )
vs.                                 )
                                 )   Civil Action No. 1:14-cv-00091-L-LDA
                                 )
City of Cranston, Rhode Island   )
                                 )
         Defendant.        )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I. INTRODUCTION ..................................................................................................... 1

II.   STANDARD OF REVIEW ................................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

    A.   This Court Has Already Rejected Defendant's Legal Arguments ............. 3

    B.   Plaintiffs Have Proven, Without Dispute, the Essential Factual Allegations in their Complaint Concerning the ACI Population ........................................... 10

    C.   No Material Facts Remain in Dispute ....................................................... 19

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Thompson*, 462 U.S. 835, 844-45 (1983) ........................................................... 9

*Burns v. Richardson*, 384 U.S. 73 (1966) ........................................................................ 7

*Davidson v. City of Cranston, R.I.*, 42 F. Supp. 3d 325, 332 (D.R.I. 2014). ............. passim

*Evans v. Cornman*, 398 U.S. 419 (1970) .......................................................................... 5

*Evenwel v. Abbott*, No. 14-940 (Feb. 4, 2015) .................................................................. 4

*Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) ............................................ 2

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977). ................................... 4

*Mahan v. Howell*, 410 U.S. 315 (1973) ............................................................................ 8

*Matusevich v. Middlesex Mut. Assur. Co.*, 782 F.3d 56, 63 (1st Cir. 2015) ...................... 3

*Mitchell v. United States*, 88 U.S. 350, 353 (1874) ........................................................ 12

*Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) ........................................................ 3

*Reynolds v. Sims,* 377 U.S. 533, 577 (1964) ..................................................................... 9

*Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) ................................................. 2

**Statutes**

R.I. Gen. Laws § 17-1-3.1 ............................................................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 2

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Karen Davidson, Debbie Flitman, Eugene Perry, Sylvia Weber, and

American Civil Liberties Union of Rhode Island, Inc., by counsel, respectfully submit

this Memorandum of Law in support of both Plaintiffs' Objection to Defendant's Motion

for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment.  This

Memorandum is accompanied by Plaintiffs' Statement of Disputed Facts addressing the

factual allegations Defendant cites in support of its Motion for Summary Judgment, as

well as Plaintiffs' Statement of Undisputed Facts that support Plaintiffs' Cross-Motion

for Summary Judgment.

## I.   INTRODUCTION

In February 2014, Plaintiffs filed a Complaint alleging that Defendant City of

Cranston violated the Constitution's Equal Protection Clause by choosing to count the

entire population of Rhode Island's only state-run correctional facility in a single city

ward, resulting in a deviation between the most and least populous city wards of

approximately 28 percent—far outside the range considered acceptable by Supreme

Court precedent.  The City responded by filing a Motion to Dismiss citing Rule 12(b)(6)

of the Federal Rules of Civil Procedure and claiming that Plaintiffs failed to state a claim

upon which relief could be granted.  Def.'s Mem. Supp. Mot. Dismiss, Mar. 13, 2014.

This Court denied the City's Motion to Dismiss, agreeing with Plaintiffs that it would be

unconstitutional to count the isolated, nonvoting, nonresident prison population in a

1

single Cranston ward should the plausible factual allegations contained in the Complaint prove true. *Davidson v. City of Cranston, R.I.*, 42 F. Supp. 3d 325, 332 (D.R.I. 2014).

After several months of discovery, the City filed a Motion for Summary Judgment, but offers no new facts to rebut Plaintiffs' allegations. Rather, in a virtual repeat of its unsuccessful Motion to Dismiss, Defendant instead simply restates its flawed legal arguments—arguments this Court has already rejected. On the other hand, all of the factual evidence now on the record unequivocally confirms the truth of the key allegations in Plaintiffs' Complaint. Further, Defendant's Motion confirms that no material facts remain in dispute at this point.

Because this Court has already ruled on the key legal issues in this case; because Defendant offers no new facts or relevant legal arguments; because the undisputed facts on the record prove the essential allegations in the Complaint; and because no material facts remain in dispute, Plaintiffs are entitled to judgment as a matter of law. This Court should therefore deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Cross-Motion for Summary Judgment.

## II.   **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is only "genuine" if it "may reasonably be resolved in favor of either party." *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (internal quotation marks omitted). A fact is "material" only if it "has the potential of determining the outcome of

2

the litigation." *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (internal citations omitted).

More than merely showing that there is no dispute as to any material fact, however, a movant must also show that those facts compel judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). If a movant misinterprets the applicable law, summary judgment must be denied. *See, e.g.*, *Matusevich v. Middlesex Mut. Assur. Co.*, 782 F.3d 56, 63 (1st Cir. 2015). While Plaintiffs agree that there are no material facts in dispute, as demonstrated by this Court's previous rejection of Defendant's legal claim and discussed by Plaintiffs below, Defendant does not meet its burden of showing those facts entitle it to judgment as a matter of law.

Cross-motions for summary judgment do not change the summary judgment standard, but rather the court must determine "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Matusevich v. Middlesex Mut. Assur. Co.,* 782 F.3d 56, 59 (1st Cir. 2015) (internal quotation marks and citations omitted). As demonstrated below, there are no material facts in dispute and, as this Court has previously upheld Plaintiffs' claims as valid, Plaintiffs are entitled to judgment as a matter of law.

## III.   ARGUMENT

### A.   This Court Has Already Rejected Defendant's Legal Arguments

The key question in this case is whether it was unlawful for the City of Cranston to count the entire non-resident population of Rhode Island's only state-run correctional facility in a single city ward, when doing so results in a substantial distortion of political

representation.  Individual Plaintiffs Davidson, Flitman, Perry, and Weber claim that the

City's practice violates their constitutional rights to Equal Protection of the laws by

denying them both equal voting power and equal access to representation as compared

with their peers in Ward 6, where the Adult Correctional Institutions (ACI) is located.

Compl. ¶ 30.  They have standing to pursue such claims because they live in Cranston

wards other than where the prison is located.[1]  Statement of Undisputed Facts ¶¶ 4, 5, 6.

Defendant City of Cranston has offered the following legal arguments throughout this

case, all of which this Court already considered and explicitly or implicitly rejected in its

denial of Defendant's Motion to Dismiss.

> *1. This Court has already ruled that Plaintiffs' claims do not require a false choice between representational equality and electoral equality*

First, the City insists in its Motion for Summary Judgment, as it did in its Motion to

Dismiss, that Plaintiffs ask this Court to choose between two competing conceptions of

the principle of one person, one vote—representational equality and electoral equality.

Def.'s Mem. Supp. Mot. Summ. J. 9-10, July 9, 2015; Def.'s Mem. Supp. Mot. Dismiss

9-11, Mar. 13, 2014.  But, this Court has already decisively rejected this assertion and

made clear that ruling for the Plaintiffs requires the Court to make no such choice.[2]

---

[1] Organizational Plaintiff American Civil Liberties Union of Rhode Island has standing on behalf of its members who are Cranston residents adversely affected by population equality defects of the 2012 Redistricting Plan.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

[2] The Supreme Court will address the question of whether representational or electoral equality is constitutionally mandated this coming term in the case *Evenwel v. Abbott*, No. 14-940 (Feb. 4, 2015).  The outcome of that case, however, will not affect the question presented here since counting the persons incarcerated at the ACI as part of Cranston's population base does not serve the goals of either conception of one person, one vote equality.

4

*Davidson v. City of Cranston, R.I.*, 42 F. Supp. 3d 325, 331-32 (D.R.I. 2014).  The Court

correctly observed that "the case now before this Court presents an alleged set of

circumstances that appears to be justified by neither the principle of electoral equality nor

of representational equality." *Id.* at 331.  The Court went on to point out that, assuming

Plaintiffs' allegations are true, "[c]learly, the inclusion of the ACI prison population is

not advancing the principle of electoral equality because the majority of prisoners,

pursuant to the State's Constitution, cannot vote, and those who can vote are required by

State law to vote by absentee ballot from their pre-incarceration address"; and that "the

prisoners' inclusion in Ward Six does nothing to advance the principle of representational

equality." *Id.*  Defendant proffers nothing new to suggest that this reasoning was in any

way incorrect.

> 2.  *This Court has already ruled that the ACI population can be*
>      *meaningfully distinguished from true Cranston residents for*
>      *purposes of Plaintiffs' claims*

The City next attempts to lump the isolated, incarcerated ACI population together

with actual Cranston residents such as students, children, and non-citizens, as if there

were no way to draw meaningful distinctions between incarcerated people and Cranston

residents.  Def.'s Mem. Supp. Mot. Summ. J. 12-13.  This, too, is a contention this Court

has considered and rejected, relying in part on factors catalogued in *Evans v. Cornman*,

398 U.S. 419 (1970).  *Davidson*, 42 F. Supp. 3d at 331-32.

Plaintiffs assert not only that the incarcerated population of the ACI is not permitted

to vote for local elected officials but—as important—unlike actual residents that may not

vote, the ACI population is cut off from the rest of Cranston's Ward 6 and unable to

participate in the life of the community—a key fact that has now been undisputedly

established through discovery.  *See infra* Part B.  This Court has recognized the importance of this distinction, noting that "[n]onvoting residents generally have the right to petition elected officials, even if they were not able to vote for them; and they may generally be presumed to have a great interest in the management of their municipalities. This is true of minors, noncitizens, college students, and military and naval personnel." *Davidson*, 42 F. Supp. 3d at 331.  In contrast, "[b]ased on Plaintiffs' allegations, it appears to the Court that the ACI population does not participate in any aspect of the City's civic life."[3]  *Id.* at 332.  This Court should again reject Defendant's second attempt to conflate the discrete and isolated population of the ACI with actual resident populations in Cranston.

> 3.   *This Court has already rejected Defendant's tautological argument that the 2012 Redistricting Plan is constitutional because it is constitutional*

The City's primary legal claim, repeated in support of both its Motion to Dismiss and Motion for Summary Judgment, is that no constitutional violation can possibly have occurred because the 2012 Redistricting Plan meets the Supreme Court's population equality standards.  Def.'s Mem. Supp. Mot. Dismiss 6-7; Def.'s Mem. Supp. Mot. Summ. J. 7-8.  Defendant asserts that "the City's 2012 Redistricting has a total deviation of 5.8%; a deviation far less than ten (10) percent."  Def.'s Mem. Supp. Mot. Summ. J. 7

---

[3] Students provide a particularly useful contrast since Johnson & Wales University maintains student housing facilities in the City of Cranston.  Statement of Undisputed Facts ¶ 70.  Unlike those confined at the ACI, students are free to move through the community, patronize local businesses, and interact with other residents.  *Id.* ¶ 68. Describing one of his interactions with students at Johnson & Wales, Mayor Allan Fung said that he talked with them about "how they could help be part of the community and interact with city government resources if they need to."  *Id.* ¶ 70.

(internal citations omitted).  "Accordingly," the City concludes, "the City's 2012 Redistricting meets the 'one person, one vote' doctrine of the Equal Protection Clause." *Id.*

This legal conclusion, of course, tautologically assumes an answer favorable to the City regarding the central issue to be litigated in the instant case: that the City may count the ACI population as part of its population base for redistricting purposes regardless of what little resemblance this population bears to actual Cranston constituents.  If the City's legal argument is wrong, however, then Plaintiffs are entitled to summary judgment because the City does not dispute that if the ACI population is not erroneously included, the result is a deviation between the City's most and least populous wards of more than 28%.  Def.'s Rep. Mem. to Pls.' Opp. to Mot. Dismiss 1.

This Court, in denying Defendant's Motion to Dismiss, has already ruled that the City's legal argument is wrong.  The City argues, in both its Motion to Dismiss and Motion for Summary Judgment, that *Burns v. Richardson*, 384 U.S. 73 (1966), suggested that courts should accord a significant measure of respect to legislative choices related to districting.  Def.'s Mem. Supp. Mot. Summ. J. 4-6.  But the City ignores a critical caveat.  The Supreme Court noted in *Burns* that such deference is due "*[u]nless a choice is one the Constitution forbids.*"  384 U.S. at 92 (emphasis added).  As demonstrated by the undisputed facts discussed below, the City of Cranston's decision to count the entire population of individuals involuntarily incarcerated in the only state-run correctional facility in a single city ward, resulting in a maximum population deviation of more than

28% in city council and school board elections, is a choice the Constitution does in fact forbid.[4]

#### 4. The City cannot conclusively rely upon Census numbers when such reliance would lead to serious distortions

Next, Defendant City of Cranston holds up its reliance on Census data as if it starts and ends the conversation about the lawfulness of its districting practices.  Def.'s Mem. Supp. Mot. Summ. J. 1, 7.  This Court, however, already noted that "[t]he Supreme Court has recognized the shortcomings of relying on Census figures to establish intrastate voting districts, and has never held that reliance on Census figures is constitutionally required."  *Davidson*, 42 F. Supp. 3d at 330 (internal citations omitted).  In *Mahan v. Howell*, 410 U.S. 315 (1973), cited by this Court for the above proposition, the Supreme Court also goes one step further, holding that in some circumstances jurisdictions must adjust raw Census data in order to meet the constitutional requirement of making a "good-faith effort to achieve absolute equality."  *Id.* at 321.

It is undisputed that more than 200 local jurisdictions—those most vulnerable to severe, constitutionally cognizable distortions—have taken the affirmative step of adjusting the Census data in service of this "good-faith effort."  Statement of Undisputed Facts ¶ 66.  Due to extensive interest from its end users, the Census Bureau began to provide an "Advanced Group Quarters" file as of the 2010 Census to give jurisdictions

---

[4] The City seizes upon *Burns'* passing reference to "persons denied the vote for conviction of crime."  384 U.S. at 92.  The *Burns* case, however, refers to a substantially different population—which includes those who have completed sentences and are dispersed throughout the community—in a substantially different circumstance.  Indeed, many of the persons incarcerated at the ACI are in fact able to vote, but must vote absentee from their home communities rather than as "residents" of the ACI.  Nowhere does *Burns* suggest that cities are free to artificially inflate their population base with people who have been involuntarily incarcerated on the city's soil, especially when such persons are concentrated so as to cause substantial distortions in representation.

and districting professionals the data they need to make the relevant adjustments.  *Id.* ¶ 67.  The City of Cranston had access to the Advanced Group Quarters file during the process that culminated in its 2012 Redistricting Plan and could easily have adjusted their base population data so as to avoid the severe distortions caused by the non-resident ACI population.  *Id.*

In denying Defendant's Motion to Dismiss, this Court has in effect already ruled that the City may not conclusively rely upon its use of Census data to avoid responsibility for such distortions.  If such conclusive reliance was a valid defense, discovery would have been unnecessary and the Court would have granted Defendant's Motion to Dismiss.

> 5. *Defendant misrepresents Supreme Court precedent as requiring discrimination against a protected class to make out a one person, one vote claim*

Lastly, the City repeats its specious argument that Plaintiffs cannot provide a legal basis for their claim because "there is no claim of invidious discrimination based on protected class status, such as racial discrimination."  Def.'s Mem. Supp. Mot. Summ. J. 4; *see also* Def.'s Mem. Supp. Mot. Dismiss 4.  But, the Supreme Court has never held that racial discrimination is an essential element of a one person, one vote claim. *See, e.g.*, *Brown v. Thompson*, 462 U.S. 835, 844-45 (1983); *Reynolds v. Sims*, 377 U.S. 533, 577 (1964).  This Court has already implicitly rejected this argument by denying Defendant's Motion to Dismiss.

In sum, in denying Defendant's Motion to Dismiss, this Court has already rejected all of the legal arguments now put forward by the City.  It has already held that Plaintiffs will succeed on the merits if their allegations about the ACI population prove true.

9

Discovery has now established, unequivocally, the truth of Plaintiffs' allegations.  No trial is necessary, and Plaintiffs are entitled to judgment as a matter of law.

### B. Plaintiffs Have Proven, Without Dispute, the Essential Factual Allegations in their Complaint Concerning the ACI Population

All of the essential facts that Plaintiffs alleged in their complaint and this Court assumed true, and hence relied upon in denying Defendant's Motion to Dismiss, have been proven through discovery.  These undisputed facts establish that 1) Cranston's city wards do not meet population equality standards without including persons incarcerated at the ACI in Cranston's base population count; and 2) counting the non-resident incarcerated population of the ACI does not serve the goals of either representational or electoral equality.

> *1.  Cranston's 2012 Redistricting Plan fails to meet population equality standards except by improperly counting persons incarcerated at the ACI as part of its population base*

Without counting the persons incarcerated at the ACI in Cranston's population base, the maximum deviation between the most and least populous city wards is approximately 28%.  Statement of Undisputed Facts ¶ 11.  The City cannot point to anything in the record that could materially dispute this figure, and in fact appears to have already conceded that without counting the population incarcerated at the ACI, its 2012 Redistricting Plan does not comport with population equality standards.[5]  Def.'s Resp. to

---

[5] There were some minor disagreements among expert witnesses about the exact population of the ACI, but the question of which precise population figure to use is not material to the central question of whether the districts meet population equality standards.  *See* Statement of Undisputed Facts ¶ 12.  Regardless of which ACI population figure one uses, subtracting that number from Defendant's inflated Ward 6 population

Pls.' 1st Req. Admis. Nos. 3-4; Def.'s Reply Mem. to Pls.' Opp. to Mot. Dismiss 1 ("The other thing upon which there appears to be agreement is the maximum deviation is approximately 28% if the prisoners at the ACI are not counted as residents in Ward 6….").

> 2.  *Counting the entire ACI population in Cranston's Ward 6 serves neither representational equality nor electoral equality*

In its Memorandum and Decision denying Defendant's Motion to Dismiss, the Court neatly summarized the key factual allegations in the Complaint that support the notion that counting the ACI population in Cranston's Ward 6 serves neither representational nor electoral equality:

> According to Plaintiffs, the "overwhelming majority" of prisoners are not residents of Cranston, let alone its Ward Six.  Assuming this to be true, as the Court must on a motion to dismiss, the number of prisoners who are able to vote in Ward Six likely is negligible.  Moreover, Plaintiffs allege, in addition to not voting in Ward Six, the prison population is unable to participate in, benefit from or contribute to any aspect of civic life in Cranston.

*Davidson*, 42 F. Supp. 3d at 327.

The undisputed facts confirmed and uncovered through discovery demonstrate that these key allegations are true.

> 3.  *It is undisputed that the vast majority of the persons incarcerated at the ACI are not residents of Cranston or Ward 6, domiciled there, or even present for a substantial period of time*

The undisputed facts demonstrate that the overwhelming majority of the persons incarcerated at the ACI are not residents of Cranston, much less Ward 6.  Under Rhode Island law, those who did not live in Cranston prior to becoming incarcerated do not

---

base always produces deviations well outside the acceptable range.  Critically, the City has made no attempt to justify a population deviation of approximately 28%.

become domiciled at their prison address by virtue of their incarceration and are not considered residents for voting or other purposes.  R.I. Gen. Laws § 17-1-3.1.  This is unsurprising since it is undisputed that persons present at the ACI have no choice or discretion as to where they are incarcerated, either to await trial or to serve a sentence.  Statement of Undisputed Facts ¶ 19.  Incarcerated people do not choose to join the Cranston community, which is an essential element of affecting a change of domicile.[6]  *See e.g.*, *Mitchell v. United States*, 88 U.S. 350, 353 (1874).

Persons not from Cranston make up the vast majority of the ACI population.  Expert witnesses were able to identify only 153-155 persons incarcerated at the ACI who listed a pre-incarceration address that geocoded to a location within Cranston.  Statement of Undisputed Facts ¶ 17.  This is less than five percent (5%) of the more than 3,000 people incarcerated at the facility.  Further, only 18 of these addresses were found to be located in Ward 6—approximately one half of one percent (0.5%) of the prison population.  *Id.*

In addition, any reasonable factfinder would conclude from the record that most of the persons incarcerated at the ACI are present in Ward 6 for a very short period of time.  More than two thirds (69%) of all persons incarcerated at the ACI are typically released within six months; and approximately 84% are released within one year.  *Id.* ¶

---

[6] Defendant points out that Cranston's Charter uses the term "inhabitant" rather than "resident" in reference to drawing district boundaries, as if this was a distinction relevant to the instant case.  Def.'s Mem. Supp. Summ. J. 11.  In determining whether it is lawful to count a particular population in a particular place for districting purposes, what is important is the role this population plays (or does not play) in the community, not what the persons who comprise this population are called by statute, charter, or any other law.  In this case, the persons incarcerated at the ACI did not choose to come to Cranston, *see supra* Part B.3, cannot participate in civic life while there, *see infra* Part B.4, and in most cases do not stay there very long, *see infra* Part B.3.

24.  The median length of stay at the ACI for persons serving a prison sentence is 99

days.  *Id.* ¶ 20.  The median incarceration period of the approximately one third of the

ACI population present there while awaiting trial is only three days.  *Id.* ¶¶ 21, 22.

> **4.  *Persons incarcerated at the ACI are isolated from Ward 6 residents and are not able to take part in community or civic life in Ward 6.***

Any reasonable factfinder would further conclude from the record that the ACI

population is indeed "unable to participate in, benefit from or contribute to any aspect of

civic life in Cranston."  *Davidson*, 42 F. Supp. 3d at 327.  As a threshold matter, it is

undisputed that persons incarcerated at the ACI are almost entirely physically isolated

from the rest of the community.  As Rhode Island Department of Correction officials

have confirmed, they are only permitted to leave the ACI grounds for a limited number of

reasons, and are usually supervised by armed guards and not permitted to interact with

the public.  Statement of Undisputed Facts ¶¶ 25-27.  At any given time, far less than one

percent of the prison population is on work release, and only about 60-100 persons are on

strictly supervised work detail.  *Id.* ¶¶ 25, 26.  Furloughs are granted for specific purposes

and those on furlough are not permitted to interact with the general public.  *Id.* ¶ 27.

This means that at any given time more than 95% of the persons incarcerated at

the ACI are completely shut off from the surrounding Ward 6 community, and are unable

to interact in any way with people or institutions outside the prison walls.  They cannot

visit churches or theatres, or patronize local businesses such as restaurants, hotels,

grocery stores, or gas stations.  *Id.* ¶ 28.  In fact Ward 6 Councilman Michael Favicchio

noted in his deposition that he could not think of any group of residents within the ward

he represents that is more isolated than the people incarcerated at the ACI.  *Id.* ¶ 40.  "I don't think anyone has more isolation," he said.  *Id.*

Further, the undisputed facts demonstrate that the persons incarcerated at the ACI are not permitted to or able to make substantial use of city services, much less services unique to Ward 6.  Due to their confinement, they cannot use city parks, playgrounds, or public transportation.  *Id.* ¶ 28.  They are not permitted to call the police or the fire department from the prison location.  *Id.* ¶ 52.  The children of persons incarcerated at the ACI are not even permitted to attend public schools in Cranston by claiming residence of the parent at the ACI.  *Id.* ¶ 18.

The City argues that it provides sewage, police, and fire services to facilities on the state grounds where the ACI is located, but any reasonable factfinder would conclude that the burden the ACI places on the City, and on Ward 6 specifically, if any, is negligible.

First, the City is completely reimbursed by the State for sewage costs and ambulance services provided at the ACI.  *Id.* ¶ 32.  Next, only a small fraction of the police and fire calls the City identifies as relevant are related to actual ACI facilities, as opposed to other facilities on state grounds, such as the Eleanor Slater Hospital, the juvenile detention center, or the homeless shelter.[7]  *Id.* ¶¶ 56-59.  The Rhode Island State Police, for example, maintains a station at the ACI and Rhode Island Department of Corrections policy requires that State Police personnel are the first point of contact for any incident at the facility.  *Id.* ¶ 29.  The Cranston Police Department received 467,361

---

[7] The Rhode Island Department of Corrections defines the ACI as including seven facilities.  Statement of Undisputed Facts ¶¶ 8, 9.  These facilities are located on property owned by the State of Rhode Island, which also contains several other facilities that are not part of the ACI.

calls between 2003 and 2009, and only 370 calls from 2003 to 2014 are potentially

related to the ACI—which is at most no more than 1/10 of 1 percent.  *Id.* ¶¶ 55, 56.  Less

than 1.5% of the calls the Cranston Fire Department receives in a typical year are related

to the ACI.  *Id.* ¶ 63.  And, as noted above, the persons actually incarcerated at the ACI

have no ability to call the Cranston Police Department or the Cranston Fire Department.

*Id.* ¶ 52.

Even if the persons incarcerated at the ACI were placing a substantial burden on

the City as a whole and this somehow justified including the prison population in the

City's base population count for voting or representation purposes, this still would not

justify counting the entire population of the ACI *in Ward 6 specifically*.  This is because

the City does not divide up its police or fire districts by ward, or budget for or fund its

police or fire departments by ward.  *Id.* ¶¶ 53, 54, 60-62.  Hence, whatever financial

burden the ACI might place on Cranston and its residents falls evenly across the city; it is

not concentrated in Ward 6.

     5. *The proportion of the ACI population that can vote in*
       *Cranston's Ward 6 is "negligible."*

Plaintiffs have demonstrated through discovery, without dispute, that only a

"negligible" portion of the ACI population can vote in Cranston, much less Cranston's

Ward 6.  *Davidson*, 42 F. Supp. 3d at 327.  It is undisputed that approximately 37% of the

ACI population has been convicted of a felony and therefore cannot by law vote in Rhode

Island elections.  Statement of Undisputed Facts ¶ 33.  As noted above, even those who

are permitted to vote ordinarily cannot use the ACI as their voting "residence" and must

vote absentee from their pre-incarceration home address.  R.I. Gen. Laws § 17-1-3.1.

Since most of these persons' pre-incarceration addresses are not in Cranston, they may

not vote in the City.  In fact, as noted above, Defendant was able to identify only 155

persons incarcerated at the ACI, out of more than 3,000, who *might be* eligible to vote in

Cranston, and Plaintiff's expert was able to identify only 18 persons who might be

eligible to vote in Ward 6—clearly a "negligible" number.[8]   Statement of Undisputed

Facts ¶ 17.

> *6.   Persons incarcerated at the ACI do not receive meaningful
> representation from local elected officials.*

Based on the material undisputed facts on the record, any rational factfinder

would conclude that persons incarcerated at the ACI do not receive meaningful

representation from elected officials in Ward 6 or Cranston more broadly, and that these

officials do not in fact provide such representation.  The overwhelming majority of

persons incarcerated at the ACI cannot vote in Cranston elections, and the isolation from

the community described above extends to the incarcerated population's relationships (or

lack thereof) with Cranston city officials.

Elected officials in Cranston consider interacting with their constituents and

responding to their concerns a significant responsibility.  Statement of Undisputed Facts ¶

33.  They do so extensively and by various means including in person, by phone, and

through written communications.  *Id.* ¶ 34.  This type of mutual engagement—whereby

constituents raise ideas or concerns with their elected officials on behalf of themselves

and their families and those officials both respond directly and also seek feedback and

participation regarding their own initiatives—is a key aspect of the representational

relationship in a democracy.

---

[8] Some of these persons may have been convicted of a felony and therefore ineligible to vote.

Yet the record clearly demonstrates that this type of representational relationship is absent with respect to Cranston elected officials and the persons incarcerated at the ACI.  First, the undisputed evidence establishes that those present at the ACI do not petition Cranston officials with any regularity, and that City officials are not receptive to such outreach.  The City was able to produce only one letter from a person incarcerated at the ACI to a local elected official over a ten year period prior to the filing of this lawsuit. *Id.* ¶ 46.  The letter, addressed to Cranston Mayor Allan Fung, complained of substandard medical care in the ACI facility—but it fell on deaf ears, as the Mayor did not respond. *Id.*  More important, the City was not able to produce a *single* communication from anyone incarcerated at the ACI to a Ward 6 City Councilman or a Ward 6 School Committee Member—the two elected officials in Cranston who specifically represent the geographic area where the ACI is located.  *Id.* ¶ 36.  There is also no evidence of friends or family members of persons incarcerated at the ACI reaching out to Cranston elected officials on their behalf.  *Id.* ¶ 49.

The record also reflects, without dispute, that Cranston City officials have not meaningfully engaged the persons incarcerated at the ACI, and have largely conducted themselves as if the presence of more than 3,000 people within the City limits was of little consequence to them.  The City Councilor who currently represents Ward 6 is the one person one might expect to be most responsive to the persons incarcerated at the ACI, or concerned with their welfare since these persons purportedly make up one quarter of the "population" of his ward.  Councilman Michael Favicchio, however, has made no effort to talk to persons incarcerated at the ACI in his capacity as City Councilor, to determine their interests, or to advocate on their behalf.  *Id.* ¶ 37.  And,

despite significant outreach across his district, he made no effort to campaign for votes at the ACI.  *Id.* ¶¶ 38, 39.  The Ward 6 School Committee member also has had absolutely no contact whatsoever with persons incarcerated at the ACI.  *Id.* ¶ 36.

Mayor Fung has also made no effort to communicate with, interact with, seek the support of, or ascertain the views of the ACI population.  During his time as Mayor, Mr. Fung has visited the ACI exactly once, for an employee "Family and Friends Day," but did not even interact with any incarcerated persons while at the facility.  *Id.* ¶¶ 43, 44. He employs a full time constituent affairs director and yet never directed this person to reach out to or interact with any of the persons incarcerated at the ACI.  *Id.* ¶ 45.  Despite extensive outreach across Cranston, he has never campaigned for votes at the ACI.  *Id.* ¶¶ 41, 42.  And, as noted, the one time he was contacted by a person incarcerated at the ACI prior to this suit, he did not respond.

The three at-large members of the Cranston City Council—the other elected officials who might in theory "represent" those present at the facility—have had no contact with persons incarcerated at the ACI.  *Id.* ¶ 36.  Cranston elected officials have barely set foot inside the ACI over the years.  A search of public visitation records for every person who has served as Mayor, Ward 6 City Councilor, or At-Large City Councilor since 2003 revealed that, aside from lawyer-client contacts, three Cranston officials had made a total of eight visits to persons incarcerated at the ACI over more than ten years.  *Id.* ¶ 48.  Further, there is no evidence that the Cranston City Council has ever

18

considered the needs or interests of the persons incarcerated at the ACI, or taken their views into account in its decision-making.[9] *Id.* ¶ 50.

The evidence cited above unequivocally establishes that the relevant material allegations in Plaintiffs' Complaint are indeed true: persons incarcerated at the ACI are isolated from the rest of the community and do not "benefit from or contribute in any aspect to civic life"; a "negligible" number of them are able to vote in Cranston elections; and they neither seek nor receive meaningful representation from local elected officials. *Davidson*, 42 F. Supp. 3d at 327. Given these undisputed facts, no reasonable factfinder would conclude that counting the entire non-resident population of the ACI in Cranston's Ward 6 serves the goals of either representational or electoral equality.[10]

## C. No Material Facts Remain in Dispute

The basic mathematics of this case have been unchanged and unchallenged from the beginning. Both Plaintiffs and Defendant agree that Cranston's 2012 Redistricting Plan meets population equality standards if it was permissible to count the ACI population in Ward 6, and fails to meet such standards if it was unlawful to count the entire non-resident prison population in a single city ward when it resulted in the substantial

---

[9] Mayor Fung did report interacting with persons incarcerated at the ACI at a local senior center, but could not point to a specific piece of City business discussed beyond their work at the center; and cannot recall any requests made of him in his official capacity as mayor. *Id.* ¶ 47.

[10] Defendant's own expert witness, Kimball Brace, underlined this point. When Mr. Brace was retained by the State of Rhode Island to draw House and Senate districts following the 2010 Census, he split the ACI population among multiple legislative districts. Statement of Undisputed Facts ¶ 15. Mr. Brace undertook this strategy specifically to reduce the distortive impact that the ACI population might have if all of it were included in a single district. *Id.*

19

distortions seen here.  Statement of Disputed Facts ¶ 3; Statement of Undisputed Facts ¶ 11.

Plaintiffs have put forward facts that establish that it was unlawful to count the ACI population in Cranston's Ward 6.  The City has offered no evidence to dispute or rebut any of these facts.  Defendant's Motion for Summary Judgment does not proffer any evidence or even allege, for example, that a substantial number of the persons incarcerated at the ACI are actually domiciled in Cranston or are permitted to vote in local elections.  The City does not proffer any evidence or even allege that the ACI population is able to take part in civic or community life in Cranston's Ward 6 in any meaningful way.  The City does not proffer any evidence or even allege that local elected officials consider persons incarcerated at the ACI to be constituents, or that they have made any effort to provide such persons with meaningful representation.

## IV.    CONCLUSION

This Court rejected Defendant's legal arguments in denying the City's Motion to Dismiss.  The City merely repeated these legal arguments in its own Motion for Summary Judgment, and offered no new facts in support.  Plaintiffs, on the other hand, have demonstrated that the essential allegations in their Complaint are undisputed.  As such, Plaintiffs are entitled to judgment as a matter of law.

For the foregoing reasons, this Court should deny Defendant's Motion for Summary Judgment, grant Plaintiffs' Cross-Motion for Summary Judgment, enter declaratory judgment for Plaintiffs on all counts, enjoin Defendant from holding further elections under the current ward districting plan, enter a scheduling order providing the Defendant 30 days to propose a new redistricting plan that satisfies constitutional requirements, and

20

establish a schedule for adoption of a Court-ordered districting plan in the event

Defendant fails to propose a new plan that satisfies constitutional requirements.


DATED: August 6, 2015


Plaintiffs,

By their attorneys:

/s/ Lynette Labinger
Lynette Labinger #1645
RONEY & LABINGER LLP
344 Wickenden St.
Providence, RI 02903
(401) 421-9794
(401) 421-0132 (fax)
labinger@roney-labinger.com
Cooperating counsel,
American Civil Liberties Union of RI

Adam Lioz
Demos
1710 Rhode Island Avenue NW, 12th Floor
Washington, DC 20036
(202) 559-1543x112
alioz@demos.org

Brenda Wright
Demos
358 Chestnut Hill Avenue, Suite 303
Brighton, MA 02135
(617) 232-5885x13
bwright@demos.org

Sean J. Young
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 284-7359
syoung@aclu.org

Aleks Kajstura
Prison Policy Initiative
69 Garfield Avenue, Floor 1
Easthampton, MA 01027
akajstura@prisonpolicy.org
*(Of Counsel)*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).


　　　　Normand G. Benoit & David J. Pellegrino
　　　　Partridge Snow & Hahn LLP
　　　　40 Westminster Street, Suite 1100
　　　　Providence, RI 02903


　　　　　　　　　　　　　　　　　　　<u>/s/ Adam Lioz</u>

23